## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **MICKEY RAY TAYLOR, JR.,** | § | |
| *Petitioner* | § | |
| | § | **MO-24-CV-00059-DC** |
| **v.** | § | |
| | § | |
| **ERIC GUERRERO, DIRECTOR** | § | |
| **TDCJ–CID,** | § | |
| *Respondent* | § | |

## ORDER DENYING PETITIONER'S 28 U.S.C. §2254
## AND DENYING A CERTIFICATE OF APPEALABILITY

Before the Court are Petitioner Mickey Ray Taylor, Jr.'s (Petitioner) Application for Writ of Habeas Corpus by a Person in State Custody filed pursuant to 28 U.S.C. §2254 (§2254), his Amended §2254, as well as Respondent Bobby Lumpkin's (Respondent) Answer with Brief in Support. [docket numbers 1, 4, & 19, respectively]. Petitioner filed a Traverse to Respondent's Answer. [docket number 22]. Petitioner also filed ten other miscellaneous motions, notices, supplements, attachments, and requests for both the Court and Respondent to Show Cause. [docket numbers 10, 11, 13, 14, 21, 26, 27, 30, 31, & 32]. Petitioner lastly filed a Motion for Summary Judgment based on his mistaken belief that the failure of Respondent to serve him with copies of the state court record requires summary judgment on his behalf. [docket number 34]. That said, the Court already supplied Petitioner with a copy of the State Court Records filed in his case. [*See* docket number 24]. This case is now ready for a decision.

After reviewing the pleadings and the applicable law under Rule 4 of the Rules Governing §2254 Cases in the United States District Courts, the Court concludes that this case must be dismissed with prejudice as it is unexhausted and procedurally barred, the ineffective assistance of counsel claims which were exhausted are denied as they lack merit and are unable

to overcome the doubly deferential standard, and he suffered no prejudice from any alleged speedy trial violation.

## I.  Jurisdiction

Although Petitioner is housed in the Jordan Unit in Pampa, Texas, he was sentenced on from the 385th Judicial District Court of Midland County, Texas, in cause number CR54221 for the third-degree felony of evading arrest or detention with a motor vehicle. This Court has jurisdiction over the matter, as jurisdiction is proper in either the district where the person is in custody or in the district in which the state court convicted and sentenced him. *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.  Background facts

According to the Eleventh Court of Appeals of Texas, these are the underling facts of this case:

> On August 16, 2019, Deputy Rusty Winn with the Midland County Sheriff's Office responded to a disturbance call indicating that "there was a male inside of the residence with a knife, trying to defend his family from something that was not there." When Deputy Winn arrived on scene, he found Appellant in the driver's seat of an SUV and a woman standing outside of the vehicle. Deputy Winn testified that Appellant refused to comply with orders to step out of the vehicle, so he deployed his taser. After Deputy Winn tased Appellant, Appellant "jumped back into the driver's side" of the vehicle and drove away from the scene.
>
> Deputies Winn, Rodriguez, and Cortinas began the pursuit, which eventually involved numerous officers from multiple agencies attempting to stop Appellant's vehicle. During the pursuit, Appellant drove erratically throughout the city of Midland and in Midland County, reaching speeds of up to 90 miles per hour. Officers ultimately deployed tire "spikes" to disable Appellant's vehicle, and Appellant was taken into custody.
>
> Following the events on August 16, 2019, the State charged Appellant with a three-count indictment for assault family violence with a previous conviction, evading arrest in a vehicle, and aggravated assault against a public servant. The State dismissed the assault charges and proceeded on the evading charge. Appellant

entered an open plea of nolo contendere on the evading charge. The trial court accepted Appellant's plea and found him guilty of the offense. The trial court did not admonish Appellant of the immigration consequences of his plea.

During the punishment trial to the bench, the State presented the testimony of three officers involved in the pursuit and offered two in-car camera videos, which the trial court admitted into evidence. At the conclusion of the evidence, the trial court assessed Appellant's punishment at five years in the Institutional Division of the Texas Department of Criminal Justice.

*Taylor v. State*, No. 11-21-00256-CR, 2022 WL 17346072, at *1 (Tex. App.—Eastland, Dec. 1, 2022, no pet.).

### III.    Claims raised

1. Ineffective assistance of trial counsel when counsel:
   a. Failed to meet with Petitioner pretrial to discuss the evidence or defensive strategy;
   b. *Failed to file motions in limine or stipulate to any matter prior to trial;*
   c. Failed to file a motion to suppress and request a timely suppression hearing;
   d. Failed to seek a bond hearing upon re-arrest;
   e. Failed to move for dismissal on speedy trial grounds;
   f. *Failed to seek Petitioner's release after brutal retaliation by Sheriff's Department upon rearrest;*
   g. Failed to admonish Petitioner regarding any waiver of his rights to appeal or a speedy trial;
   h. *Advised Petitioner to waive his right to a jury trial before and after the suppression hearing;*
   i. Failed to withdraw Petitioner's plea after the bench trial had begun (Ground Four); and,
   j. *Failed to preserve error for appellate review.*
2. The trial court erred and (Ground Three)
   a. *Petitioner's Due Process rights were violated when the trial court failed to substantially admonish Petitioner of the consequences of his plea and the waivers it entailed; and,*
   b. *The trial court abused its discretion and violated Petitioner's Sixth Amendment right to a speedy trial by not granting Petitioner's speedy trial motion.*

[docket number 1 at 6–7] (Respondent asserts the italicized claims are unexhausted).

### IV.    Procedural history

On December 1, 2022, the Eleventh Court of Appeals of Texas affirmed the trial court's judgment. *Taylor v. State*, No. 11-21-00256-CR, 2022 WL 17346072 (Tex. App.—Eastland, Dec. 1, 2022, no pet.) (not designated for publication). Petitioner did not file a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals (TCCA).

On December 8, 2022, Petitioner filed an art. 11.07 state habeas application, which the TCCA dismissed without written order on January 11, 2023, noting that the conviction was not yet final. [docket number 20-9 at 1]; *Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013) (The mailbox rule applies to *pro se* state habeas applications.). On February 23, 2023, Petitioner filed another art. 11.07 state habeas application challenging this conviction. [docket number 20-29 at 8]. The trial court obtained trial counsel's affidavit responding to Petitioner's ineffective assistance of counsel claims. [docket number 20-31 at 46–47]. The state habeas court entered findings of fact and conclusions of law on August 11, 2023. [docket number 20-29 at 34–41]. Petitioner mail-filed a supplemental art. 11.07 state habeas application on July 25, 2023. [docket number 20-17 at 18]. The trial court entered amended findings on August 17, 2023. [docket number 20-28 at 3–10]. The TCCA denied the application on September 6, 2023, without written order on the findings of the trial court and the Court's independent review of the record. [docket number 20-12].

Petitioner filed his federal habeas petition on February 17, 2024, and this proceeding followed. [*See* docket number 1 at 12]; *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (*pro se* prisoner's habeas petition deemed filed, for purposes of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), when it is delivered to prison authorities for mailing).

## V.     Standard of review

Because Petitioner filed this federal habeas corpus action after the effective date of the AEDPA, this Court's review of his claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

The legislative history of the AEDPA indicates that it was intended as a limitation upon the scope of federal habeas review, not as an enactment intended to broaden the scope of federal habeas review or to reconfigure federal habeas courts as super state appellate courts. One of the principal purposes of the AEDPA was to reduce delays in the execution of state and federal criminal sentences, especially capital sentences. *Ryan v. Valencia Gonzales*, 568 U.S. 57, 76 (2013); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Rhines v. Weber*, 544 U.S. 269, 276 (2005).

Another purpose of the AEDPA was to encourage litigants to pursue claims in state court prior to seeking federal collateral review. *Duncan v. Walker*, 533 U.S. 167, 181, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); *see also Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (the AEDPA imposes the burden on a petitioner to litigate to the maximum extent possible, including fairly presenting all available evidence supporting, his claims in state court). The AEDPA was also intended to prevent piecemeal litigation and gamesmanship. *Magwood v. Patterson*, 561 U.S. 320, 334 (2010).

Thus, under the AEDPA, federal habeas review of claims is limited to the record that was before the state court that adjudicated the prisoner's claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "The AEDPA statute of limitations promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court

judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205–06 (2006). Collectively, the provisions of the AEDPA further the principles of comity, finality, and federalism. *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Under the AEDPA standard of review, this Court cannot grant Petitioner federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Davenport*, 596 U.S. 118, 142 S. Ct. 1510, 1525, 212 L.Ed.2d 463 (2022); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of 28 U.S.C. §2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141, 125 S.Ct. 1432; *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite Supreme Court authority

6

does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141, 125 S.Ct. 1432; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of ... clearly established Federal law,' §2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520–21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the *dicta*, of Supreme Court decisions existing at the time of the relevant state-court decision establish those principles. *Brown*, 142 S. Ct. at 1525 ("It is not enough that the state court decision offends lower federal court precedents."); *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Section 2254(d)(2) provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410 ("[A]n unreasonable application of federal law is different from an incorrect application of federal law."). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).

In addition, §2254(e)(1) provides that a federal habeas petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings

were erroneous. *Schriro*, 550 U.S. at 473–74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. 333, 338–39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1). It remains unclear at this juncture whether §2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under §2254(d)(2). *See Wood*, 558 U.S. at 300–01 (choosing not to resolve the issue of §2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of §2254(e)(1)).

The deference to which state-court factual findings are entitled under AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.").

Before a federal court may grant a state prisoner habeas corpus relief on a claim that was adjudicated on the merits in state court, the petitioner must not only satisfy the requirements of AEDPA but must also convince the court that the error committed by the state court during its adjudication of the petitioner's criminal case was not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Brown v. Davenport*, 596 U.S. 118, 142 S. Ct. 1510, 1517, 212 L.Ed.2d 463 (2022). In *Shinn v. Jenkins*, 596 U.S. 366, 142 S. Ct. 1718, 1732, 212 L.Ed.2d

713 (2022), the Supreme Court held that when a federal habeas petitioner has properly exhausted state court remedies on a federal constitutional claim through direct appeal or a state habeas corpus proceeding, federal habeas review of that claim is circumscribed in that the federal court is limited to reviewing the record before the state court that resolved the claim on the merits and the petitioner must establish that, under Supreme Court precedent, no fair-minded jurist could have reached the same result as the state court. *See also Shoop v. Twyford*, 596 U.S. 811, 142 S.Ct. 2037, 2044, 213 L.Ed.2d 318 (2022) (where a petitioner failed to develop the factual bases for his claims in state court, he is entitled to present new evidence in support of his claims before the federal habeas court only in the two limited circumstances outlined in §2254(e)(2)).

Lacking a showing that there is an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of a petitioner, this Court is statutorily precluded from granting federal habeas corpus relief on any claim that has not been fairly presented to the state courts. *Davila v. Davis*, 582 U.S. 521, 527 (2017) (the exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first affording the state courts an opportunity to correct a constitutional violation); 28 U.S.C. §2254(b)(1). Still, this Court is authorized to deny federal habeas relief on the merits notwithstanding a petitioner's failure to exhaust available state court remedies. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (a federal habeas court abuses its discretion if it grants a petitioner a stay when his unexhausted claims are plainly meritless); 28 U.S.C. §2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

If the state courts failed to adjudicate a claim on the merits that Petitioner now presents to this Court, then this Court's review of the un-adjudicated claim is *de novo*. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (*de novo* review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state court failed to address the prejudice prong of *Strickland*); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (*de novo* review of the prejudice prong of *Strickland* was required where the state court rested its rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins*, 539 U.S. at 534 (same).

## VI.    Exhaustion

Respondent argues that some of Petitioner's claims are unexhausted and procedurally barred from review. [docket number 19 at 9]. The exhaustion doctrine requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To satisfy the exhaustion requirement, a claim must be presented to the highest court of the state for review—here, the TCCA. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). To proceed before that court, a petitioner must either file a PDR (after his conviction is affirmed by an intermediate appellate court), Tex. R. App. P. 68.1, or an application for a post-conviction writ of habeas corpus. Tex. Code Crim. Proc. Ann. art. 11.07.

Federal habeas corpus petitioners are required to exhaust their available state law remedies. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). "'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Ex Parte Wilder*, 274 F.3d 255, 259–260 (5th Cir. 2001)

(quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, the petitioner must have presented the highest state court with the same claim, the same factual basis for the claim, and the same legal theory in order to meet the exhaustion requirement. *Id.* "[F]leeting reference to the federal constitution," especially when such reference is not accompanied by any federal case law authority, generally does not suffice to "alert and afford a state court the opportunity to address an alleged violation of federal rights," and that "vague references to such expansive concepts as due process and fair trial" in a state court proceeding will not satisfy the exhaustion requirement. *Id.* at 260.

When unexhausted claims are contained in a §2254, and when such claims, if the petitioner tried to exhaust them in state court, "would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure," the claims should be dismissed with prejudice as procedurally barred. *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"). Only when the petitioner makes a colorable showing that his unexhausted claims would be considered on the merits by the state courts if he attempted to exhaust them, should the claims be dismissed without prejudice. *Horsley*, 197 F.3d at 136–137.

Petitioner must have first provided to the highest court of the state a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual claims, before a federal court will entertain the alleged errors. *Duncan v. Henry*, 513 U.S. 364, 365–366 (1995); *Picard v. Connor*, 404 U.S. 270, 275, 277–78 (1971). The exhaustion doctrine is based on principles of comity between the state and federal judicial systems and "reflects a desire to

'protect the state courts' role in the enforcement of federal law.'" *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). To satisfy the exhaustion requirement, Petitioner must have not only presented his claims to the highest state court, but he must have presented them in a procedurally correct manner. *Castille*, 489 U.S. at 351.

Since Petitioner failed to inform the state court of the same facts and legal theories in support of some of his claims, those claims are now unexhausted because he did not fairly present them to the state court before coming to the federal court. *See Picard*, 404 U.S. at 276– 77 (a petitioner must have informed the state court system of the same facts and legal theories on which he bases his assertions in his federal petition). Because some of these claims are unexhausted and Petitioner cannot now go back to state court, they are also procedurally defaulted.

In this regard, Petitioner already petitioned for a state writ challenging the circumstances of his conviction, so any attempt to petition for another state writ challenging the same conviction would result in a citation for abuse of the state writ by the TCCA. *See Ex parte Whiteside*, 12 S.W.3d 819, 821–22 (Tex. Crim. App. 2000). It is well-settled that citation for abuse of the writ by the TCCA constitutes a procedural default that bars federal habeas review of the merits of a habeas petitioner's claims. *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997). The Fifth Circuit has noted that the TCCA applies its abuse-of-the-writ rules regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). A state court must explicitly apply a procedural bar to preclude federal review when a petitioner has failed to exhaust his state-court remedies and the state court to which he would be required to present his unexhausted claims would now find these claims to be procedurally barred. *Id.* In such cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*; *see Nobles*, 127 F.3d at 423 (finding

unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred).

Since this Court has now found that the factual and legal construct of these claims fundamentally differs from the claims presented before the TCCA, the responding state authorities were denied the opportunity to rebut his factual and legal allegations. Thus, the Court now finds that six of Petitioner's claims are unexhausted and procedurally barred from review. [1]

## VII.    Ineffective assistance of counsel (IAC) standard

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" — "'strongly presume[d to be] good enough'" — "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, IAC during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385–1386. The constitutional standard

---

[1] The amended version of §2254(b) provides that a federal court may deny a petitioner's application for habeas relief on the merits, notwithstanding his failure to exhaust state court remedies. 28 U.S.C. §2254(b)(2). As the Supreme Court explained, the exhaustion requirement "is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray v. Netherland*, 518 U.S. 152 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

In order to demonstrate that their attorney's performance was constitutionally deficient, a convicted defendant must show that their counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390–91; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994); *Darden v. Wainwright*, 477 U.S. 168, 184; *Strickland v. Washington*, 466 U.S. at 687–88. A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable, professional assistance. *See Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993); *Strickland*, 466 U.S. at 687–91.

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland's* first prong is satisfied"

(citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland's* deferential standard,' the state court's denial must be upheld."

*Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111–12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. §2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019).

Where the state court has adjudicated claims of IAC on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and §2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); compare *Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel

claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of §2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910–11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland's* standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult. The standards created by *Strickland* and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101–02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[2]

---

[2] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt' " (quoting *Burt v. Titlow*, 571 U.S. 12, 22, 15 (2013)); *Adekeye*, 938 F.3d at 683–84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of *reasonableness*. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable." Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently].

## VIII. IAC[3] discussion

According to the Amended Findings of Fact, Conclusions of Law, and Order entered on August 17, 2023, by the Honorable Leah G. Robertson, the Court found that there were "no controverted, previously unresolved factual issues material to the legality of Applicant's confinement which require an evidentiary hearing." [docket number 20-28 at 3]. The Court also found the following regarding the legal representation Petitioner received, and on the issue of voluntariness of the plea.

> 8. The Court finds that the affidavit of Alvaro Martinez is credible, and further finds that Mr. Martinez communicated often with the applicant regarding the case, its progression, and his defense strategies. *See* July 17, 2023, Affidavit of Alvaro Martinez.
>
> 9. The Court finds that the applicant has failed to provide any evidence to the contrary to show that Mr. Martinez failed to communicate with him. *See* July 17, 2023, Affidavit of Alvaro Martinez.
>
> 10. The Court finds that, based on Mr. Martinez' affidavit, that the applicant refused to review the evidence with his counsel, despite counsel's attempts to do so. *See* July 17, 2023, Affidavit of Alvaro Martinez.
>
> 11. The Court finds that the applicant wanted his case to proceed based on his own ideas about how he should be represented but did not want to represent himself.
>
> 12. The Court finds that, based on Mr. Martinez' affidavit, applicant did not want to proceed to trial, but wanted to challenge the case, and insisted Mr. Martinez file multiple motions on applicant's behalf, even though many of those motions were not procedurally appropriate. *See* July 17, 2023, Affidavit of Alvaro Martinez.
>
> 13. The Court finds that a Petition for Writ of Habeas Corpus Reduction of Excessive Bail was filed on September 19, 2019, and a hearing was held on September 26, 2019. A motion for bond reduction was filed on August 21, 2020, and an Order Setting Bail and Conditions of Release on Bond was signed on September 2, 2020.

---

'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted, emphasis in original)).

[3] The counsel Petitioner complains of in this §2254 is Alvaro Martinez, not his three prior counsels: Paul Williams, Raymond Fivecoat, or H.W. Leverett, Jr. [*See* docket number 20-3 at 123–125].

14. The Court finds that a motion for speedy trial was filed on August 5, 2021, and an Order on the Motion for a Speedy Trial was filed on September 3, 2021. The Motion for Speedy Trial was denied.

15. The Court finds that proceedings on a motion to suppress were held, and that the applicant failed to show how Mr. Martinez' argument in the motion to suppress hearing were incompetent and what counsel should have instead argued. Applicant fails to show how counsel's conduct was deficient.

16. The Court finds that the applicant failed to provide any evidence or show in any way that Mr. Martinez incorrectly advised him that he could plead nolo contendere and retain both his appellate and speedy trial rights. Applicant failed to advise the Court what advice he was given, how it was incorrect, and further that his rights to a speedy trial and appeal were violated.

17. The Court finds that the applicant's claim that Mr. Martinez failed to advise him of the consequences of his plea is contrary to the record. At the time of the plea, the Court asked applicant if he had sufficient time to discuss the consequences of his plea with his attorney, and the applicant stated that he had. (R.R. II 62–64).

18. The Court finds that Mr. Martinez wholly discussed and explained the Alford plea with the applicant and that the applicant understood the consequences, and knowingly and voluntarily plead nolo contendere.

19. The Court finds that, after review of the record, the applicant entered into his plea knowingly, intelligently, and voluntarily.

[docket number 20-28 at 5–7, ¶¶ 8–19].

Under the Conclusions of Law section, the Court also held the following:

1. The applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); and *Narvaiz v.State*, 840 S.W.2d 415,434 (Tex. Crim. App. 1992).
2. The entirety of the representation provided to the applicant by Alvaro Martinez was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.
3. The applicant failed to allege sufficient facts, which if found to be true, would entitle him to relief regarding pretrial motions not being filed by trial counsel. *Ex parte Maldonado*, 68 S.W.2d 114,

20

116 (Tex. Crim. App. 1985). To prevail on a Post Conviction Writ of Habeas Corpus, the applicant bears the burden of showing, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). The applicant failed to meet this burden.

4. The applicant fails to show that his plea of nolo contendere was unlawfully induced, made involuntarily, or made without knowledge of the consequences of the charge against him and of his plea.

5. The applicant's second ground for relief is a record claim and is not a cognizable claim in a Post Conviction Writ of Habeas Corpus. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996).

6. The applicant did not provide any evidence to support his claims of police misconduct, and therefore, fails to meet his required burden of proof. *Ex parte Maldonado*, 866 S.W.2d 114, 116 (Tex. Crim. App. 1985).

7. The applicant has failed to demonstrate that his conviction was improperly obtained.

Accordingly, this Court recommends to the Court of Criminal Appeals that it deny the application.

[*Id.* at 8–9]. The TCCA did deny the application on September 6, 2023, without written order on the findings of the trial court and the Court's independent review of the record. [docket number 20-12].

Petitioner has not shown that his attorney's representation was deficient or that he was prejudiced by deficient representation with respect to any of his exhausted ineffective assistance of counsel claims. He has not satisfied his burden for obtaining relief under *Strickland*. Relief should also be denied because he failed to show, as required by 28 U.S.C. §2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, he failed to overcome the "doubly" deferential standard that must be accorded to his attorney in light of both *Strickland* and

§2254(d). *See Richter*, 562 U.S. at 105. The Court finds that the exhausted ineffective assistance of counsel claims raised simply lack merit and must be denied.

## IX. Speedy trial discussion

In evaluating whether a petitioner's right to a speedy trial has been violated, courts utilize a four-factor balancing test, examining (1) the length of delay; (2) the reason for delay; (3) petitioner's diligence in asserting his right; and (4) the prejudice to petitioner. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "The length of the delay is ... a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." In the Fifth Circuit, a delay of at least one year from the time of arrest or indictment, whichever occurs first, to the time of trial is presumed to trigger the use of the balancing test. *See United States v. Serna–Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).

"In applying a *Barker* balancing [test], the court must weigh the first three *Barker* factors–length of the delay, reason for the delay, and defendant's diligence in asserting his right against any prejudice suffered by the defendant due to the delay in prosecution." *Serna–Villarreal*, 352 F.3d at 230. In assessing prejudice, three interests are key: "(1) the prevention of 'oppressive pretrial incarceration,' (2) reducing the 'anxiety and concern of the accused,' and (3) protecting against impairment of the defense." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994) (quoting *Barker*, 407 U.S. at 532).

The offense in this case occurred on August 16, 2019, and the trial took place on October 19, 2021, resulting in a delay of approximately two years and two months. This length of the delay is sufficient to trigger a *Barker* analysis. *See Goodrum v. Quarterman*, 547 F.3d 249, 257

(5th Cir. 2008) (noting that it is the rule of the Fifth Circuit that a delay of approximately one year is sufficient to require a full *Barker* analysis).

According to the Respondent,

> Regarding the reasons for the delay, deliberate delaying tactics by the prosecutor should weigh heavily against the government while more neutral reasons such as negligence or overcrowding should weigh less heavily. *Barker*, 407 U.S. at 531; *see also Doggett v. U.S.*, 505 U.S. 647, 657 (1992). But when there are valid reasons for the delay, or the delay is attributable to the conduct of the defendant, then this factor weighs in favor of the state. *Goodrum*, 547 F.3d at 258; *see also United States v. Loud Hawk*, 474 U.S. 302, 316–17 (1986) (the government is not held responsible for delays resulting from the defendant's actions). In this case, the cause for delay should weigh heavily against Taylor and in favor of the state. A large portion of the delay is attributable to Taylor, as detailed below. Also, much of the period of delay occurred during the Covid-19 pandemic, which presented logistical issues for courts and counsel alike.

[docket number 19 at 30–31].

Petitioner filed a *pro se* motion to dismiss on speedy trial grounds November 21, 2019. [docket number 20-3 at 68–71]. On November 18, 2019, however, Petitioner's counsel had filed a motion for appointment of an expert to examine Petitioner's competency, which was granted on December 19, 2019. [docket number 20-3 at 65–67, & 72].

On January 23, 2020, the Court entered an order finding Petitioner competent to stand trial. [*Id.* at 79]. On January 24, 2020, a motion to withdraw as counsel was filed, indicating that Petitioner wished to proceed *pro se*; also indicating that trial was at that time set for May 18, 2020. [*Id.* at 80–81]. An order substituting counsel was entered on February 28, 2020. [*Id.* at 82].

Counsel for Petitioner then filed a motion to extend deadlines in May of 2020 and a motion for a court appointed investigator in April of 2020, which were granted. [*Id.* at 95–97, &

100–02]. On July 22, 2020, another motion to withdraw as counsel was filed and granted and a new counsel was appointed. [*Id.* at 112–13].

Another motion to withdraw as counsel was filed in September of 2020, in which the history of the case was detailed, on the basis that it appeared Petitioner wished to represent himself, would not entrust his defense to court appointed counsel, and if required to remain on the case, it would only be a matter of time before Petitioner accused counsel of ineffective assistance of counsel. [*Id.* at 122–25]. Petitioner filed an affidavit in support of that motion. [*Id.* at 126–32]. The motion was granted in October of 2020. [*Id.* at 133].

Petitioner's new counsel filed a motion suggesting incompetency and requesting examination in May of 2021. [*Id.* at 135]. On May 11, 2021, the case was set for a status hearing on May 21, 2021. [*Id.* at 174]. Petitioner's counsel filed a motion for speedy trial on August 5, 2021. [*Id.* at 148]. However, that same day, counsel filed a motion to withdraw indicating it was filed at Petitioner's request. [*Id.* at 151–53]. On August 6, 2021, that an order was entered on Petitioner's previous motion for a competency evaluation, finding Petitioner competent to stand trial. [*Id.* at 154]. Petitioner filed a motion to proceed *pro se*. [*Id.* at 155]. The motion to withdraw as counsel was denied on August 30, 2021. [*Id.* at 184]. Petitioner's motion to proceed *pro se* and his motion for speedy trial was denied on September 3, 2021. [*Id.* at 183, & 185]. Trial took place on October 19, 2021. [docket number 20-7].

Although there was a two year and two months delay, the delay was not deliberately caused by the State. Petitioner's own actions and behavior directly caused a significant portion of the delay, as did the Covid-19 pandemic.[4]

Because the first three *Barker* factors do not weigh heavily in Petitioner's favor, prejudice cannot be presumed. *See also Serna–Villarreal*, 352 F.3d at 232 ("this court and others

---

[4] "There is no pandemic exception to the Constitution." *Carson v. Simon*, 978 F.3d 1051, 1060 (8th Cir. 2020).

generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years.") (citing *Doggett*, 505 U.S. at 658 (finding presumed prejudice after a government-caused delay of six years)); and *Goodrum*, 547 F.3d at 260 (declining to find that prejudice was presumed for a delay of two years and six months).

Even if the court assumes the delay in this case crosses a threshold level regarded as presumptively prejudicial, *see United States v. Lucien*, 61 F.3d 366, 371 (5th Cir. 1995), application of the balancing factors fails to establish a deprivation of the right to a speedy trial. And, the delay in this case is not of a magnitude normally considered unusually long. *See Laws v. Stephens*, 536 F. App'x 409, 414 n.7 (5th Cir. 2013) (collecting cases), *cert. denied*, 134 S.Ct. 2133, 188 L.Ed.2d 1127 (2014). As the Fifth Circuit explained: "The bare minimum required to trigger a *Barker* analysis is one year. A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused." *Amos v. Thornton*, 646 F.3d 199, 206–07 (5th Cir. 2011) (footnote omitted).

Next, the delay cannot be attributed to the State, and certainly there is no evidence that any such delay, even if attributable to the State, was motivated by a desire to hamper the defense. Third, while Petitioner may have asserted his right to a speedy trial, he also contributed significantly to the delay in the proceedings given the request for four different court-appointed counsels during this period in question. Clearly, Petitioner's actions in replacing counsel appeared to be responsible for a good deal of the delay in getting his case to trial as new counsel had to get up to speed on the case each time he replaced counsel. It would hardly be fair to the State to allow Petitioner to now benefit from these delaying tactics that he took throughout his representation to now claim a speedy trial violation.

Additionally, Petitioner fails to show he was substantially prejudiced by the delay. Prejudice to the defendant/petitioner as a result of the delay is the final *Barker* factor. "[O]rdinarily the burden is on the defendant to demonstrate actual prejudice. But where the first three factors together weigh heavily in the defendant's favor, we may conclude that they warrant a presumption of prejudice, relieving the defendant of his burden." *United States v. Molina–Solorio*, 577 F.3d 300, 307 (5th Cir. 2009) (citations omitted). Here, only the length of delay weighs in Petitioner's favor. Accordingly, there is no presumption of prejudice. *See Amos*, 646 F.3d at 208 (finding no presumption of prejudice when only one of the three factors weighed in the petitioner's favor). Petitioner, therefore, must demonstrate that he suffered "actual prejudice," which is "assessed in light of the three following interests of the defendant: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired." *Id.* (citation and internal quotation marks omitted).

The most important of the three inquiries under this factor is the possibility that the defense will be impaired. *Barker*, *supra*. Petitioner did not argue how his defense was impaired and he was detained pretrial on a newer offense as well. Therefore, because Petitioner caused a good portion of the delay, his assertion of the right to a speedy trial conflicted with his other requests for proceeding with his case, and he did not demonstrate that he was prejudiced by the delay, he has failed to demonstrate that the state court's denial of his speedy trial claim was unreasonable. 28 U.S.C. §2254(d). Petitioner is not entitled to federal habeas relief on this claim, and it is thusly, denied. As all of Petitioner's claims have been denied, so too is his §2254.

## X. Certificate of appealability

Because the habeas corpus petition filed here is governed by the AEDPA, codified as amended at 28 U.S.C. §2253, a certificate of appealability (COA) is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. §2254 or §2255 require a COA). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals ....'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. §2253(c)(1)).

A COA will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. §2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.

Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a COA, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons discussed above, the Court concludes that jurists of reason would not debate whether any

procedural ruling here was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a COA will not be issued in this case.

## XI. Conclusion

Accordingly, it is **ORDERED** Petitioner's Application for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2254 is **DENIED** and **DISMISSED WITH PREJUDICE** and a **CERTIFICATE OF APPEALABILITY WILL NOT BE ISSUED** in this case.

It is so **ORDERED**.

**SIGNED this 23rd day of April, 2025.**

**DAVID  COUNTS**
**UNITED STATES DISTRICT JUDGE**